WARD MCDOWELL, APPELLEE, V. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.*

FILED MAY 10, 1935. No. 29238.

*Beghtol, Foe & Rankin,* for appellant.

*Clinton J. Campbell* and *John J. Wilson, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

PAINE, J.

This is a suit brought to recover for permanent disabilities under an accident policy. The jury returned a verdict for the plaintiff in the sum of $642.18, and judgment was entered thereon, together with an attorney fee in the sum of $150.

Ward McDowell took out an accident insurance policy, which went into effect on January 22, 1926, which provided for a payment of $5,000 in case of death from accident within 90 days, and for $25 weekly indemnity against total disability because of accidental injury. He paid the semiannual premiums on said policy, in the sum of $9.90, until he was injured, Sunday, April 5, 1931. This occurred while he was driving his automobile down Eleventh street for recreation; another car came out of the alley and struck his car at about 8:15 in the evening. His kneecap was broken in several places, there was a cut across his nose, his ankle and leg were also injured, and he remained in a cast for eight weeks immediately after the accident. Certain veins swelled above the cast and other complications arose, and phlebitis attacked his limbs, and he suffered great pain. He never recovered from these permanent injuries, and died June 18, 1934. He had be-

*Opinion vacated. See p. 764, *post.*

gun this action before he died, and it has been revived in the name of his wife as administratrix. The defendant company continued payments under the insurance policy of $25 a week until March 19, 1933, and then discontinued all payments, and urged the insured to change to partial disability payments, which would pay only half the amount of total disability; the policy providing that, when the insured went on partial disability, such payments would terminate at the end of 26 weeks, which was what the company desired.

This action was first brought by the plaintiff in the municipal court in Lincoln, and from a judgment in that court an appeal was taken to the district court, and there for the first time the defendant company set up as one of its defenses that the insured had changed his occupation, and that a premium that he was paying would have purchased an indemnity of about $20.84 under the occupation which he was following at the time of his injury.

In the reply filed in the district court, paragraph 2 reads: "Further replying plaintiff alleges that the defendant has waived its right and also is estopped by its acts to set up its pretended defense that plaintiff has changed his occupation to a more hazardous one and that such change has reduced the amount of indemnity to which plaintiff is entitled, as set out in paragraph 2 of its answer, for the reason that defendant pleaded no such defense in the lower court from which this case comes on appeal; and for the further reason that defendant, with full knowledge of the character of the plaintiff's occupation, recognized its liability to him in the amount of $25 per week for his total disability and made payment of said amount to this plaintiff to the 19th day of March, 1933, and also collected and retained premiums from this plaintiff on the basis of such indemnity liability, and that defendant cannot now avail itself of the contention that plaintiff at the time of the accident had changed his occupation and thereby reduced the indemnity due him under his policy."

In the evidence it is shown that the defendant insurance company regularly paid the weekly indemnity of $25 a week from April 5, 1931, to March 19, 1933, and at no time made any point of any change in deceased plaintiff's occupation. The company then offered partial disability.

The plaintiff insists that defendant is estopped from interposing in the district court, for the first time, the defense of change of occupation. "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold." *Mitchell v. Brotherhood of Locomotive Firemen and Enginemen,* 103 Neb. 791. See, also, *Hamblin v. Equitable Life Assurance Society,* 124 Neb. 841; *First State Bank of Overton v. Stephens Bros.,* 74 Neb. 616; *Continental Ins. Co. v. Waugh,* 60 Neb. 348.

"If a person before suit refuses to satisfy a demand for particular reasons stated by him to the plaintiff, he will not be permitted after litigation has commenced to change his ground and defend upon entirely different considerations." *Hilmer v. Western Travelers Accident Ass'n,* 86 Neb. 285.

In the old case of *Ballou v. Sherwood,* 32 Neb. 666, Chief Justice Cobb, in a 47-page opinion, suggests that the change in that case was a mere afterthought, suggested by the pressure and exigencies of the case, and that a party is estopped from changing his ground by a settled principle of law.

The defendant insists that estoppel cannot avail unless it can be shown that the defendant knew all the facts in regard to plaintiff's claim at the time it filed its answer in the municipal court. Without admitting this claim to be true, we are satisfied that the evidence does disclose that defendant was acquainted with the facts at that time.

The shift in position of the defendant in the case at bar is one that cannot be allowed, for after litigation has begun a defendant is not permitted to base his defense upon

a different state of facts; in other words, he is not permitted to mend his hold.

This being our holding, it is not necessary to consider the other errors set out in the new and additional grounds of defense. There being no prejudicial error, the judgment of the district court is affirmed, and as an attorney fee of $150 was allowed in the district court we will allow an additional attorney fee in this court of $75.

AFFIRMED.